Mr. Chief Justice, and may it please the Court, the Virginia Office for Protection and Advocacy, known as VOPA, seeks to enforce its Federal statutory right to inspect and copy records that are in the possession of State officials who run State-operated hospitals. Respondents acknowledged below that if Petitioner were a private individual  and not a private entity, Ex parte Young would permit this suit. VOPA's status as a State entity does not change the Ex parte Young analysis, because it imposed neither a greater burden on the Treasury nor the dignity of the State. The only issue to be resolved by the Federal Court is who has the correct reading of Federal law about the records access issue. If Petitioner was a private individual and not a private entity, the Federal Court would not issue an inquiry.   If Petitioner is a private entity, let's say Ford Motor Company has two subsidiaries, Ford East and Ford West. They get into a dispute. Ford West sues Ford East. No Federal court would entertain that action, would it? Well, Your Honor, if I could clarify. First of all, there would have to be a question of Federal law. Yeah. But they think Ford West thinks Ford East is discriminating on the basis of race. It would have to be. They don't like that. Adversely affects their reputation, too, so they sue them. I think that inquiry goes to the question of adversity in standing, the Article 3 question. And this case doesn't involve that, because VOPA is independent of the entities it's suing. It's independent, right? It's independent from what?  It's independent from the Respondents it's trying to sue. Yeah. And is it independent from the State? Is that what the statute says? The statute requires independence. The Federal statute requires that VOPA be independent. But it's independent here because its commission, only a third of it is appointed by the Governor, and none of the members of the commission that run VOPA can be removed except for cause. You say on page 27 of your brief, the blue brief, that there's no big deal here with respect to State sovereignty, because ultimately the sovereign retains the authority to dissolve the State agency plaintiff if the State believes the litigation is too onerous. That's correct. That is, the sovereign, the Commonwealth, could repeal the law that enacted VOPA, just as in this Court's cases, ICC v. United States. Congress could have removed, eliminated the ICC. It's a good site for your proposition. But arguably in those cases, the ICC is really not the real party in interest. The real party in interest is the beneficiary of the ICC ruling. Well, I believe this Court has continually held that independent agencies and other Federal agencies can litigate. The cases involving the Federal Labor Relations Board. And this Court has allowed, for example, suits about licenses for Federal dams, where one agency wants to build a Federal dam and another agency wants to build a Federal dam. Roberts. No court would entertain Ford West against Ford East. If that's right. And I think it is if they're part of the same, if they're subsidiaries of one corporation and aren't separate. Sotomayor, why is that true? If they're separate corporate entities, what legal rule would stop a separate corporate entity from suing another? Is there a legal — if they're part of the same company, I think that's a different issue. If they are the same company, that's a different issue in just a different branch or a different office. I had understood that to be the Chief Justice's hypothetical. They were divisions of a single legal entity. They were divisions, separate corporate entities that happen to be wholly owned by the same parent. I do believe, then, that there could be litigation between them, but ultimately there wouldn't be. Well, I would have thought that would become an advisory opinion. Ford has an internal dispute, basically, and in that hypothetical, one of the entities would be asking the Federal court to resolve it. Ford can decide at the end of the day how it wants to resolve it. If Ford West wins and Ford East loses, Ford can say, all right, this is how we're going to do it, regardless of what the Federal court says. Well, that's true that after the litigation is over, one of the parties may, you know, be able to work around the law. That's true, in fact, in every Federal spending clause statute where you're dealing with prospective relief. The State is always free to say, okay, if this is what we have to do, we opt out. The State here is free to dissolve one of the parties to the case. That's a little different. Well, it's the Commonwealth that's free to dissolve one of the parties to the case. No, it's the State commonwealth. No, I meant as opposed to the — I wasn't making that distinction, but the Respondents here are State officials, and even the Respondents' agency has no power over IPAS. And on the day-to-day basis, even the Governor and the Attorney General have no control over what IPAS — or excuse me, VOPA does. IPAS is a similar case out of Indiana. But what's critical here is that as we stand here today, the Commonwealth has vested a Federal right in VOPA, and neither the Attorney General nor the Governor of Virginia can stop VOPA from exercising that right. Sotomayor, I'm not quite sure what the premise of your argument is. You seem to be arguing that the independence of the State agency is what makes this particular entity capable of suing. Yet in your brief, you rely on Verizon's simple test, which says if you're asserting a Federal claim, you can sue, and you're not — and you're looking for prospective injunctive relief, you can sue the State. That general rule wouldn't look at who's suing. That was part of your argument. Yet now you're arguing the independence of the agency. Which is your position? And if it is the one about the State's independence, how do you articulate why that becomes important or not? What's the legal significance of that vis-à-vis this case and any ones moving forward? If I may, there are three issues that are intertwined here. First, the issue that I was talking about with the Chief Justice regarding the Article 3 adversity that you would need for standing. That's where the independence is relevant. The second question is the one that we petitioned on, which is the Eleventh Amendment issue. And there we would suggest that the simple, straightforward inquiry of Verizon is relevant. And then there's a third portion which the court of appeals seemed to rely on, which is that the notion that the State has a Federal right at all was some — against another part of the State and its officials was incongruous. That, if anything, would be a Tenth Amendment concern, and it's resolved here because it was the Commonwealth itself that made the voluntary decision to vest these Federal rights in an independent State agency. Well, let's assume — and I'm not sure what the situation is in the Commonwealth. We have held that the States don't have to have the same notion of separation of powers that the Federal Government does. In the Federal Government, we allow independent regulatory agencies, separate from the President. Let's assume that Virginia has a system in which the Governor is indeed in charge of the entire — the entire executive branch. You know whether that's the case? I don't know. It is not the case in Virginia or in 49 of the 50 States. Okay. Well, if it were, and if Congress offered money to the State, and the only way the State could get it would be to abandon its system of separation of powers and to allow an agency of the State, which would normally be under the direction of the Governor, to go riding off on its own and — and sue the Governor, you think there wouldn't be any — any problem about — about the Federal Government doing that, requiring the State to, in effect, alter its — its governmental structure in order to obtain the Federal money? I do think there might be a problem, first, requiring it. And I think there might even be a problem if it were Spending Clause statute alone. But if I realize that's the — but that's not an Eleventh Amendment problem. That's a question about whether — Sure. And here, the only question, because the only question addressed below and the only question, this is all on an interlocutory appeal just on the Eleventh Amendment, is whether we can sue other officials in the State to bring them into prospective compliance with Federal law. And as I said, though, and this statute authorizes the State, if it takes the money, to designate either a public or a private entity as its protection and advocacy system. That is, they could have vested these Federal rights in a nonprofit corporation. Well, right, but that makes all the difference in the world, because they made the choice of saying this is going to be one of us, the State. And as far as what issues before the court, I would suppose the Article III question is a jurisdictional one that we have to address before reaching the Eleventh Amendment question. I think this — they're both sufficiently jurisdictional that you could reach them in — you wouldn't have to reach Article III before the Eleventh Amendment. But I do think that the Article III question, I mean, this Court in its FOIA decisions, such as, you know, Public Citizens v. Department of Justice, has said that Congress can create a right to access to information. Ginsburg. Ginsburg. We can go back to get what the — this entity was. The Federal legislation gives the State the choice to do it either in a State agency or a private entity. The specification that the State agency has to be independent is in the Federal statute, isn't it? Yes, Your Honor. It's not up to the State do we want to put it into an independent regulatory agency. And is this VOPA, is that an entity that was created just to carry out this Federal program, or was it a preexisting agency? It and its predecessors were created just to implement this program. And does it do anything else other than administer the Federal program? It has a few responsibilities that the State has given it under State law in addition. But its primary function, and at this point all its budget, comes from the Federal government, and it serves primarily this Federal function to go into public and private institutions to observe and make sure that abuse and neglect is not occurring there. And that is obviously why these records were requested, because the statute gives the Protection and Advocacy Service a right to access records of people in the institutions to make sure that they are not being mistreated and that the investigations and the oversights by the State are taking place and are being done correctly. Counsel, following up on Justice Scalia's question to you, his question in fact is in part what happened here. Virginia at some point did require every State agency to seek the permission of its Attorney General, is it, to sue, and the government said that's not independent enough, and if you want the money, you've got to make VOPA eligible to sue without that permission. Is that correct? That is correct. And then the legislature of the Commonwealth went in and gave VOPA independent litigating authority, independent of the Attorney General. On the Eleventh Amendment point, which is again the case of the Federal court, I know you're anxious to get to that, but do you know of any other situation where one party, the Federal court action, can dissolve the other one in the middle of the case? I mean, if VOPA files a discovery request with the State and they think it is, as you put it in your brief, too onerous, the State can say, guess what, the case is over, you're dissolved. Well, again, I would go back to the Federal analogy, that in all this litigation with the ICC or the Federal Labor Relations Authority, with the licensing authority of the Department of Interior for dams that, you know, the TVA might want to build, that Congress can always eliminate these agencies, but while they're still in existence — I guess in Nixon v. United States, the President could have dismissed the Attorney General, but we allowed the suit to go forward. I never did understand that. Well, I think it's because you look at standing in terms of the current reality. And in Nixon, for example, the Attorney General had promulgated a regulation saying he couldn't dismiss a special prosecutor. But there are a number of instances in the States where constitutional officers have their separate autonomy, their separate responsibilities. And it seems to me to follow inevitably from your position that the Attorney General of State A could sue the Governor of State A, saying the Governor is being sued in an ex parte young suit following Federal law. I think that's just inevitable from your — from your position. And that seems to me a vast extension of ex parte young. It's true, I think, that we've never said that the identity of — or the permissibility of an ex parte young suit depends on the identity of the plaintiff. But don't we have to say that here if we're going to allow the States to structure their own governments as they choose? Well, I would say that — well, I would say two things. First, the idea that — you have to accept, as I think Respondents do in this case, that the Virginia Office of Protection and Advocacy legitimately holds a Federal right. I can't — I'm hard-pressed, and Respondents and their amici were hard-pressed, to come up with any example where an Attorney General would hold a Federal right against another part of the State. And particularly here — Well, he would tell the Governor that the Governor is not giving adequate protection to prison inmates or State employees, that the Governor's own personnel regulations are incorrect, and he would sue an ex parte young. If the Commonwealth — They're all kinds of Federal rights. Well, but they're generally not the — And the question is, can one State entity enforce it against another State entity in a Federal court? The — there aren't a lot of Federal rights that State officials have against other officials. Here, this is a bright — Well, that — but under your theory, there would be, because under ex parte young, the whole point of it is that a person can allege that this fiction private individual who's really a governmental individual is violating a Federal right. That's the whole point of it. Violating the plaintiff's Federal right, that was the only point I was making. But yes, if there are Federal disputes at issue, a Federal forum is appropriate, but only — But State Attorney Generals have — have the — have the obligation to enforce Federal rights for all of the citizens of their States. And if they have that right under — power under State law, then — and they exercise that power and elect to be in Federal court to litigate Federal issues, that is not barred by the Eleventh Amendment, we would submit. Well, that's — that's the issue in the — I know your white line is up. You indicated that there are certain cases in which dams can be authorized by the Federal government, I think, contrary to State laws with meanness of power. Do you know what those — there's an Iowa case. There's also a Washington case you're talking about. I believe the case you're thinking of comes out of Seattle. But — but — but I think — Do you have the citation? I don't have it with me. I've been looking for it. Okay. But — but — but the point I was making is that sometimes one Federal agency needs permission from another Federal agency to build something. And there would be a litigable controversy under Article III. And that's the only point I was trying to make. If I may, if there are no more questions, I'd like to reserve the balance of my time. Thank you, counsel. Ms. Anders. Mr. Chief Justice, and may it please the Court, VOPA has properly invoked Ex parte Young to enforce Respondent's obligations under the D.D. and Pyme Acts here because VOPA's complaint satisfies the straightforward inquiry set forth in Verizon. We don't think that it's necessary to go into State sovereignty interests to determine whether Ex parte Young should be allowed here. But even if the Court were to do that, I think it's unquestionable that there are no State sovereignty interests here. Do you think — do you think the Spending Clause allows the Federal Government to condition the receipt of Federal funds on a State's agreement to change the structure of State government? I think it does, so long as that requirement is reasonably related to the government's interest in the funds and in the objective of its regulation. Suppose the government said, if you want Medicaid funds, the State agency that administers the Medicaid program must be headed by a person who has a 20-year term of office and is removable only for gross dereliction of duty. Would that — can they do that? Can the Federal Government do that? Can Congress do it? I think it could do that, so long as that's not independently unconstitutional. I think the State always has the opportunity to decide not to opt into the scheme, and I think that's very important here because the sole aspect of this suit that Virginia challenges, which is the fact that VOPA is a State agency, is the result of two sovereign choices that the State made here. The first choice was to opt into the D.D. and Pyme Act programs, to take the Federal funds, to create a P&A system that has Federal rights of access to which both State and private facilities are subject. And the second choice that Virginia made was to establish a State agency P&A system here. It could have established a private agency if it were concerned about it. Ginsburg. Ms. Sanders, I understand that most States that are taking advantage of this program do it through a private entity, not a State. Is that right? That's correct. There are eight public P&A systems. Roberts. Can EPA sue the Army Corps of Engineers for violating the Clean Water Act? Well, I think you would have an Article III problem if there isn't sufficient adversity. If the State is concerned. Well, they're very adverse. EPA wants clean water, and the Army Corps of Engineers wants to, you know, dredge the water in a way that contributes to pollution. Well, they're both the heads of both agencies are in that situation, I think, subject to removal by the same people. And so in that situation, you would have an Article III problem. But we don't have that problem here because VOPA is independent under State law. Do you agree with the petitioners that Virginia can dissolve VOPA if it finds the litigation too onerous? I think that that would not happen in practice because if Virginia were to dissolve VOPA, it would be out of compliance with the Federal scheme. And so it would lose its Federal funding at that point. So I don't think that's a situation that's going to arise. But — If it happened to arise, do you think they can — do you agree with the petitioners that they can do it? I think they could do it, but I think this Court has previously adjudicated cases where, in theory, the government could have changed the case midstream. U.S. v. Nixon is an example of that, the ICC case as well. And I think also in the Lassen case, this Court said that it could adjudicate a suit between two State agencies because the agencies were sufficiently independent from each other. They weren't subject to removal by the same head of government. So I think while you might have an Article III problem in some situations, you don't have that problem here because of VOPA's independence. And— Could you be a little bit more specific for me on what you mean about an Article III problem? Justice Kennedy was concerned about State attorney generals willy-nilly suing or not willy-nilly, suing governors to comply with Federal law. Why do you think it won't happen, and what are the legal impediments to that occurring? I think there are several. I think first, you would have to have a Federal right that the AG would be able to enforce. He would have to have a way to get into Federal court. He would have to have a theory of standing. And I think this is not a situation that has arisen at this point. There are no examples of this. And so I think— Wait. I thought that, this I'm confused about, I would think you'd have to have a State which has a law that permits the attorney general to sue the governor. Wouldn't you? I mean, if the State law is the attorney general can't sue the governor, that's the end of it, isn't it? If there were sufficient to get into Federal court for Article III purposes, I think there might be some situations in which the Attorney General— The Governor of the State cannot bring a lawsuit against the Attorney General and vice versa. Okay? That's the State law. Now, under those circumstances, can either bring a lawsuit on a Federal right in Federal court? There may be some circumstances like that one in which the State AG's use of Ex parte Young would raise special sovereignty interests that would counsel against the Attorney  Now, let me ask you a simple question and then I'll give you an answer. In your opinion, can an Attorney General, where the State law says black letter law, the Attorney General can never sue the governor, he's fired instantly if he tries. That's the law in the State. Okay? Now, can that individual come into Federal court and sue on an Ex parte Young theory, suing the governor? I think he could under this Court's decision in Verizon. Could. I think that there may be certain extreme circumstances. I don't think that is a problem, then. Is that what we're saying here? It can't be. How can that be? He has no power as Attorney General to do that. It has nothing to do with Ex parte Young. It has to do with his power as Attorney General. Right. And as this Court said in Lafitte, I think often the Federal court doesn't look behind a State officer. My goodness. I thought that you're right about this and you can't do it. You can't. The Federal government cannot tell a State how to organize itself. If it wants to have an Attorney General that can never bring a lawsuit, that's up to the State, unless it's a due process problem. Now, suppose I believe that. Now, do you lose this case? No, I don't think so, because the same special sovereignty interests are not present here, because under the Spending Clause, Virginia had the choice to opt in to this scheme. Doesn't the Federal statute say, Virginia, if you want to do this through a State agency, that State agency has to be an independent agency and has the authority to sue? Yes. That's correct. Are you sure that the Governor cannot remove the members of VOPA? I know it says VOPA has to be independent of any State agency, and the Governor appoints one-third. Can the Governor remove the members of this Virginia agency? As a matter of State law, I don't think he can. And if he were to try to do that, that would be a compliance problem from HHS's perspective. And so Virginia made up a point. What would it not comply with? I just don't know. I'm just looking at the provision where you say it's independent, and it says independent of any State agency. You said the Governor may not appoint more than one-third. I just wonder if there's a prohibition on him removing. Well, there's definitely a prohibition on him removing board members of VOPA or officials of VOPA as a result of VOPA's actions in litigation. I think that's the provision. Where is that? Well, the provision, the requirement that VOPA have full authority to pursue legal remedies to ensure the protection of individuals. This is on page 52A of the Petition Appendix. That's the Pyme law. And I think that actually did happen in Virginia, that HHS came in. What if the VOPA officials are engaged in corruption or illegal conduct or, you know, extracurricular activity that brings discredit upon the — the Governor has no power to say that you're a Virginia official and you're, you know, whatever, breaking Virginia law, for example? Well, under Virginia law, I think that VOPA's officials are subject to the four-cause removal provisions. So they can actually be removed judicially through four-cause proceedings. And from our perspective, that's consistent with VOPA's independence and its full authority to pursue remedies, because that type of four-cause removal wouldn't be on the basis of VOPA's actions in litigation. Going back to your exchange with Justice Breyer, I assume you could stand by your answer and say the Attorney General could sue the Governor because he's not suing the Governor in his official capacity. He has a Federal right under Ex parte Young to sue the Governor as an individual. It's a fiction. We all know that. But that's the way it works. And this is a Federal right. I think that's your position. I think that's right, that under Verizon, no more is required. VOPA has a Federal right here. Of course, Verizon was a private party. Verizon was a private party. He's suing in his capacity as Attorney General, and under his, that's the plaintiff, not the defendant. And he has no right to bring that suit, because it's not that he doesn't have a right. It's that he doesn't have authority. He's not a person that can do this kind of thing. I'm really lost here. I thought Ex parte Young applied to defendants. Yes, right. Exactly. I didn't think Ex parte Young allows an Attorney General to sue as a plaintiff in his personal capacity. Am I wrong about that? Well, I think that you might have State sovereignty interests at that point. That's your position. That would prevent the Federal court from adjudicating the suit. But there's no question that those interests aren't present here, because Virginia has chosen to create a State agency in order to enforce these Federal rights. And when an opposition is suing you … I'm with Justice Scalia on this. I'm — well, I'll ask the other side. Thank you, Ms. Anders. Mr. Getchell. Mr. Chief Justice, and may it please the Court, the dignity interest of a sovereign is impaired if it is pitted against itself in the courts of another sovereign without its consent. And I would take — A dignified sovereign should not agree to the deal. Well, let's — I mean, you know, the Commonwealth had the choice — it had two choices, as Counsel for the Government said. It could either turn down the money, or if it's not dignified enough to do that, it could take the money and establish a private organization to do this work instead of a State agency. So what — you know, what complaint do you have here? Well, let me — let me first say that the choice issue raises some interesting questions because of the procedural posture of this case being an interlocutory appeal. Because, remember, on the issue of waiver and abrogation, that was litigated below, and no waiver was found, and that wasn't appealed against. So if we're going to say it makes a difference under a spending statute that the State has taken the money in analyzing the sovereign interest, then we are creating a waiver on the cheap on disheveling the established doctrine. It's not a waiver. It's the Federal statute is clear. It says, State, you can do this in one of two ways. If you go with a government agency, then that agency has to have independence and it has to be able to sue. So the State is given a choice. It has — it can do it through a private entity. It can do it through, as in this case, an agency that was set up for this very purpose and no other, right? I would have thought two things about that. One is, when Congress gave the State the choice of making it a State agency, it understood that any issues that arise from that would come with the territory. The second thing is, what the State consented to is it waived its sovereign immunity to be sued, but it did not specify a suit in Federal court, and under ordinary doctrine, that's a consent to be sued in its own courts, not in Federal courts. Breyer, suppose you have a State which loves litigation. Forty-eight percent of the population are retired lawyers. Nothing pleases them more to have everybody suing everybody else. So they pass a statute which says, for purposes of lawsuits in this State, every department can sue every other department. Now, if you have such a State, what in the Constitution stops the Federal government from abiding by that rule and applying ordinary ex parte young rules, looking at the defendant, looking at Horizon, and then, if the plaintiff happens to be a Federal agency suing another, say, well, if it complies with those first set, the fact that A sues B, and they're both State agencies, that's the State's decision. What in the Constitution can prevent the State from deciding to organize what we'll call the legal heaven way? I would say two things about that. The first is that that's not what Congress did. Congress said they had to have a right to sue, and they didn't specify it in Federal court. Breyer, we can go into A later, because I agree that would be an answer, if it's correct. I mean, if that's what happened, that's a different question, whether Congress can restructure the State. That's a serious question. My question was on the first. Can Congress stop the State from restructuring itself? Well, I don't think the State, by restructuring itself, would then ordinarily expect its agencies to sue each other in Federal court. And where I got that from is that if they wrote it down specifically in the law and said we'd love to have our agencies sue each other, they don't say Federal court, they just say we'd love to have our agencies sue each other, they don't mention the court. I would think that under ordinary rules of waiver of sovereign immunity, that would limit the suits to the suits of the sovereign of the State. Why? Because what's undignified about allowing the State to live with the choice it made? I think the existing doctrine is an unspecified waiver of sovereign immunity does not consent to suit in Federal court. I'm sorry. I think there are concepts being confused. There's no question that it hasn't waived sovereign immunity. VOPA doesn't claim that. And this is not a direct suit against the State. It's a suit against a State official. And the entire premise of Ex parte Young is that this doesn't defend sovereign immunity for a party to seek enforcement prospectively of a Federal right. So I don't know why it really matters who the plaintiff is, so long as the sovereign interest that we've recognized that the issue of sovereignty is one that respects a Federal law and we're not going to interfere with any of them, but we are going to ensure that because of the preemptive effect of the Constitution and our laws, that Federal laws are respected. So what's in this case the intrusion on State sovereignty when the State knew and In referring to sovereign immunity, I was trying to answer the hypothetical with respect to why Ex parte Young doesn't apply. The second part of the question was Congress could expect Ex parte Young to apply. There's no indication in the legislative record that I can find of that. The State should have expected that. Excuse me. The Congress should have expected in the hypothetical Congress was posited as having thought that Ex parte Young Justice Sotomayor is totally right. I'm talking about Ex parte Young. Okay. I'm imagining a system where the State wants to let the AG, this organization, the sheriff of Middlesex County, the city of San Francisco, they want to permit such entities to become plaintiffs against other parts of the State government. In such a State, if ordinary Ex parte Young requirements are met, what in the Constitution of the United States prohibits that suit from going ahead? Because Ex parte Young is an exception to the default position. The default position is that the States at the founding retained all of their natural law of nations of sovereign immunity. We know that it was limited. A State can sue another State. The Federal Government can sue another State and — or can sue a State. And there is the Ex parte Young exception. But it is the exception. It is being extended here. We know it's being extended here because it's never been done before. And if you're going to extend it, then we ought to ask the question of whether or not — asking the Hans question. Why is it an extension? I mean, I have sort of a bit of a problem with that. Why is it somehow a greater infringement upon State sovereignty to allow a State to be sued in Federal court by a private individual who doesn't even have to be a Virginian for Pete's sake?  He could be from Iowa. And yet it somehow offends State sovereignty more when you allow a State agency to sue the State. I don't see why that's so horribly worse, unless you're arguing that it somehow destroys the State system of separation of powers. But that's a different question. And the answer to that is simply you did it yourself. Well, what I would say is that Ex parte Young is intended to deal with the situation where a citizen of a dual sovereign is able to vindicate his superior Federal rights against the State. That interest is not served one bit by having a State agency sue another State agency in Federal court, even though that State agency could have sued in State court. And I would ask the Hans question. The Hans question is, would the — you know, the Constitution is presumed not to raise up causes of action against the States that would have been considered as a nominalist and unheard of at the time of the founding. And I think if you posited whether or not at the founding, if you had asked, can a part of a State — well, can the Federal Congress authorize part of a State to sue the other part of the State in Federal court, I think it would have been regarded as an — When Virginia agreed to participate in this program, did Virginia understand that it could be sued by a vote, but not only in the State courts, but also in Federal court? I would assert not. I mean, that was the point of the waiver argument below, and the Court said there had not been a specific enough declaration of the consequences of taking the money to raise up a traditional waiver. Ginsburg. So the choice is, if it's not in — you certainly agree that this State agency has taken on the obligations of the Federal program, and if it doesn't turn over records, as the Federal statute requires it to do, it has to be amenable to sue somewhere. We know if it were a private entity administering this program, it would be suable in Federal court. So this State agency that's doing the exact same thing, because Virginia chose to do it that way, where is it — where — I mean, it's a very simple thing. The Federal statute says turn over records to the agency, and the State hospital says, no, we're not going to turn over the records. Where does the agency, whether private or public, that's administering the Federal program, go to enforce the Federal right? The program would go to State court. Virginia has waived its sovereign immunity, and there is a remedy through mandamus. Is that — I mean, see, I want to make sure I understood what your position is on that. It's not that you go into the court that you'd ordinarily go to when you want to get the extraordinary writ of mandamus, that's it? If you have a clear right to these documents as asserted, and you know that's a merits question that's never been reached, whether this is a right or a statute. I'm asking you, what is the forum? We have a simple problem. An agency, whether private or public, wants records. Federal statute says you're entitled to the records. And I would like to know now, Virginia having chosen to give this newly created independent State agency the authority rather than picking a 501c3 organization to do it. Simple. We want records of these three people. The hospital has them. The hospital doesn't give them to us. The only way under Virginia law is to petition the highest court of the State for a writ of mandamus? I would — I personally believe you could also do it in circuit court. I know this office has previously taken the position that it had to go to the Supreme Court, and I don't want to withdraw any concession that had been made there. But I personally read the statute differently. Which office has said it has to go to the State Supreme Court on mandamus? You said that the office has taken that position previously. The statute, the mandamus statute, has a fairly broad catch-all provision at the end, which I think would allow suit in circuit court. But I don't think where it can sue really informs the doctrine here, because I think the doctrine here is if you're going to let, under the analysis argued here, which is not modest, it's very, very broad, if VOPA can sue in Federal court under Ex parte Young, so can any agency of the — of any State that receives Federal funds upon which it makes the claim at the Ex parte Young stage, which is before you reach the merits. Any agency receiving Federal money that can dream up a Federal claim under Ex parte Young can sue the State. And that has independent litigating authority. Yes. Okay? I mean, that's the difference here. This agency was given independent litigating authority. I think Virginia happens to be unusual, as long as we're talking about the policy of results that will come from this. I think Virginia is unusual in having as much control in the Attorney General over who can sue than a lot of States do, because I think a lot of States have their own independent agencies that proliferate and have suit authority. But I will tell you, even in Virginia, there is a mechanism by which if you had the Governor in one party's hands and the Attorney General in the other, the Governor can declare a conflict of interest and order private counsel hired. And so if the University of Virginia wanted to sue the Governor, or rather sue the Attorney General, and the Governor said, well, if you want to and the Attorney General won't authorize it, then that's a conflict of interest. It hasn't happened. Why do you think? Don't you think it hasn't happened because there are so many practical political restraints on that kind of activity? What would happen, I think, in that State where there was a rogue Attorney General is somebody would win. The Governor would win by getting a legislative act that says it can't be done, or the Attorney General will win because the political sentiments are so strong in his or her favor that the suit is actually welcomed by the population. So where is the intrusion on sovereignty? States do what they want. The only issue is how do we protect Federal rights? I would say that it's never happened before because nobody has ever claimed before that Ex parte Young permits a part of the State to sue the other part of the State. And I would say if the word were declared from this Court that you can do that, that there would be a lot of political motivation to file suits. Breyer. It isn't that Ex parte Young, if I understand this right, which is why I mention it, it isn't that Ex parte Young permits one party, one part of the State to sue another part. It is a State permits one part of a State to sue another part. That that's common in the State, that the law requires it. And the question is, in that circumstance, should the Ex parte Young situation be treated differently? Am I right about the statement of the question in the case? I think whether or not the State has given independent authority to sue without specifying it can be in Federal court, without waiving its immunity in Federal court, is not the issue in the case. I think the issue in the case, I think that the issue in the case is whether or not Ex parte Young should be extended to do something that's never been done before. I think that's the issue in the case. And I don't think Ex parte Young, which is a necessary fiction, but it is a fiction. It's a necessary fiction to allow the citizens of a dual sovereign to vindicate his or her Federal rights in Federal court, is implicated in the least when it's a State agency that could sue another State agency by the State's consent in State court. Ginsburg. Do you know of any other statute in which there is an independent State agency that exists with the sole purpose of administering a Federal program? Is it? I'm not an expert in that area of the law. I would have thought it's quite common, but I don't know. That's just my supposition. Oh, I think that the ---- Can you give any example of a Federal program that says State? You can do it to a private agency. You can do it to a public agency, public agency created to implement this Federal program that is its sole business. I don't really know of any such. I personally don't know of one as I stand here, but my supposition is that because the Federal spending power has been so dramatically exercised over the years, that there probably is one. I had not thought to look for one. In your experience, this would be helpful, would you characterize as common or uncommon situations where State agencies are given authority to sue other parts of the State? As I think it to myself, I think, well, City of Glendale v. State Water Authority or Middlesex County Sheriff v. Bureau of Prisons. That doesn't sound weird to me. It sounds as if there probably are a lot of such circumstances, but I don't know. What do you think? There are, I think there are two things to look at. Lower subdivisions of the States, which in many States are ---- Cities against, they must do that a lot. Yes, but they are just corporations in Virginia and in most States. There are a few States where they are treated as something different, but they are not generally regarded as even units of subordinates, units of government for purposes of sovereign immunity. However, the State itself and its agencies are. And that's the issue that's implicated by Ex parte Young. I would say that University of Massachusetts v. State Environmental Organization. Does that kind of suit sound familiar to you or not? I think that the States vary as to how tolerant they are of being sued by having their parts sue each other in State court. I think I have seen titles like that. But I don't think that as a principle of Federal jurisdiction, because ultimately whether sovereign immunity exists, if it's not waived, does deprive this Court or deprives the Federal Court of the right to proceed. I think that deciding we are going to extend the fiction of Ex parte Young beyond the rights of citizens to allow the State to sue itself in Federal court is just something that's totally anomalous. I just don't see how this Court would want to do that, even if it thought otherwise that it was something that could be done under the logic of Ex parte Young. I don't know why you would want to extend that and create the Federal courts as a venue for political grandstanding, which is what I think. I'm not sure that what you are forgetting is that Virginia took a lot of money to set up and get the benefits of Federal funds by creating an independent agency. It had expressed its desire to control the agency more, and it was told very directly, you can't. You have to let that agency sue. What I don't understand is why you think that it's a greater affront to sovereignty that the suit is here as opposed to State court. The State has already said we are going to take your money and this is what we are going to permit. A suit. I think it has long been recognized that the dignity of the State is not offended at all by a suit against it in its own courts that it has authorized. I think that it is well understood that if you bring a State against its will into a case, you are using the fiction of extortion. Sotomayor. We don't bring the State in. We bring a State official who is violating a Federal law. But this Court has always recognized that there is a large sense in which that's a fiction and it's just something we have to tolerate in order to have a dual system of sovereignty. So your argument is really, really is a sovereign immunity argument. You are saying that the waiver of sovereign immunity, unless it explicitly includes a waiver to be sued in Federal courts, applies only in State courts, okay, and that that limitation should not be evaded by applying ex parte young to a suit in Federal court where the suit is by another State agency. That is precisely my argument. So sovereign immunity is part of your argument, but. Well, it's, I think it's all that's really appropriately before this Court, because, again, we are up here on an interlocutory appeal where the decision below in the Fourth Circuit by Judge Wilkinson is premised entirely on sovereign immunity. Now, explain, this is good because it's very helpful to me, the exact statement that Justice Scalia made and you said, yes, that's exactly right, and then it is the case that a citizen of the State could come into Federal court and sue the State official under ex parte young, but you say, but the agency of the State can't do it, even though they have State litigating authority, and the reason that the latter is more injurious of the dignity interests of the State than the former is? One, the State is being pitted against itself. If you look at the very caption in this case, Avopa sued the State officials in the name of the Commonwealth. Secondly, there's a, to the extent there's any authority, we have ex parte young here that gives rights to citizens, and we have a lot of cases that resulted most recently in CIRSA, in which it was recognized that the general rule is that subordinate parts of States, subordinate State authorities have no constitutional privileges and immunities that they can assert against their creator. And if you wanted to know whether or not ex parte young should be extended into this area, it seems to me that the previous expectation would have been that the ASERSA tradition would have said, no, we don't want to extend this into this area. Kennedy, are there other areas, and I can't come up with the name of the case that was suggested by counsel, your friend, in his opening argument. I thought there were cases in which a subdivision is not, a political subdivision of State is not allowed to build a dam by State law, and yet it can go to the Federal Government, get a license and build a dam anyway, and just bypass the restrictions put upon its parent. The agent has more power than the principal gives it because it relies on Federal law. I don't know the case, and if — I don't believe anybody has cited as a principal case a decision of this Court that would say that. Now, State can do anything it wanted to in terms of waiving its sovereign immunity. In this case, could Virginia sue VOPA in Federal court? I don't think — I don't think it appropriately could. You think it could or could not? I do not think it appropriately could. I don't think parts of the State can sue other parts of the State in Federal court. Well, it would be the parent suing the subsidiary, and VOPA is not the State. VOPA is part of the State for purposes of sovereign immunity analysis, I would have thought. But if somebody tried to get a personal recovery, I mean, VOPA employees or ordinary State employees, I presume they're subject to the Tort Claims Act. So it is a State agency. But I don't know why the involuntary suing of the State in Federal court, which I think raises the traditional sovereignty of dignity interest, would be reciprocal. I mean, if for some strange reason the State wanted to sue VOPA, I don't know what the answer would be, because maybe they've waived all their interest if they tried to do that. But I think that the practical problem for this Court is that there's no limit, there's no practical principle limit to what's being argued here. And so we set up this intramural political contest in Federal court as a matter of fact. And I think doctrinally that it is clear that this is an extension of Ex parte Young beyond dispute, and I don't think it ought to be extended without doing a Federalism inquiry. And I think if you do a Federalism inquiry, you ask the Hans question, is — would this have been regarded as a nominalist and unheard of at the founding, and I don't think there's — The bottom line, then, is to restrict Congress's choice. Congress wants to have an entity superintend this program for disabled people. So the instruction you would like to give Congress is, Congress, you want Federal courts to be able to enforce the Federal right, then you have to set it up as an agency, out as a private agency. You can't give Congress, you can't give the State the choice whether they'd rather do it through private or public organizations. I don't think so, for two reasons. One is, they could— I'm sorry, I don't think so what? You don't think Congress— I don't think — I think Congress could have, under traditional waiver authority, under the spending power, have said, if you want to take the money, we're making a clear statement, you have to waive your sovereign immunity and be sued in State — I mean, Federal court. That didn't happen. Also, let's not overlook the fact that the Secretary has an administrative remedy in withholding the funds, and when this Court was faced with the question of whether or not to extend Ex parte Young in the Seminole Tribe, the answer was no, we're not going to do it because there is an alternative remedy. Scalia, you would acknowledge that if the State knew when it took the money, that it was — and when it created a State agency to administer the program, that it was letting itself open to suit in Federal court under an Ex parte Young theory, then everything would be okay? Well, no, because I don't think ever it would ever— Well, that would be a waiver of whatever sovereign immunity interest— No, it can waive it. Congress could condition receipt of the money on waiving it, and I suppose— Well, Congress could, but if they knew it in this instance, when they accepted the money, you wouldn't have a case, would you? The law — if under traditional waiver doctrine it had been done right, no, we wouldn't have a case. But remember, the law of the case in this interlocutory appeal is that there was no waiver. That waiver was determined below and not appealed. Yes, that's a good point. And so under the circumstances here, we have a fairly peculiar specialized situation, but deciding in favor of the Petitioners I think is fraught with peril and is doctrinally unprecedented and improper, and we would ask that the decision of the Fourth Circuit be affirmed. Thank you, counsel. Mr. Galanter, you have three minutes remaining. I have three points for those three minutes. First, we don't think that a State AG or a State agency could sue a governor if State law prohibited it. The question of capacity to sue, the power to sue, is one of State law. What we are saying here is that if a suit could go forward between two State agencies — excuse me, between State agency and State officials in State court, then if that case involves a Federal issue, it can be heard in Federal court if the other requirements of Article III and Ex parte Young are being met. Second, there was some suggestion that Ex parte Young is only about citizens. But this Court supplied Ex parte Young to Indian tribes, allowing them to sue State officials. It's allowed foreign countries to use Ex parte Young to sue State officials. The only entity — and the Respondents concede that political subdivisions, which can also be eliminated at will by the State, could use Ex parte Young. Breyer, have you found any case, are there a lot, a few, none, where one State agency at a State level sues another in Federal court, period, say they have a rising under jurisdiction? No, there aren't a lot of them, because other than in this protection and advocacy system, none. None? See, nagging at me is some kind of Article III problem. Maybe there is none. I don't know. There are none, though, none. Well, but that's because Congress doesn't usually vest rights in. No, no, it wouldn't have to. They could get into all kinds of arguments about EPA and all kinds of Federal rights with each other, I think. I don't think that's correct. I think that most of the time when a State is involved in a dispute with another State, it's about State law. This is rather unique in that respect. And that brings me to the third point, which is this notion of waiver. Now, we are not arguing here that they waive their sovereign immunity. What we are claiming is that they don't have sovereign immunity to these injunctive suits against the State officials. We are not seeking damages, and we haven't named the State in its own name. But what we are suggesting is that it was the natural consequence, as this Court decided in Frueh, that when you, you know, accept the Federal money and you are bound by Federal duties, and that the entity that you give the Federal right to has a Federal — has a right to sue, that the Federal issues will be litigated in Federal court. And I would say particularly that here, just — of course, Virginia renews every year to take the Federal money. But when it last amended the Federal statute, or the State statute, to create VOPA in its current structure, there were existing ex parte young suits against State officials. Roberts. Roberts. I have just one question of curiosity. You said in your opening argument that 49 of the 50 States limit in some way the executive's power in this area. What's the one State? I'm drawing that from the Indiana Zemeckis brief, and I believe they identified New Jersey as a State that has a unitary executive. Thank you. The case is submitted. The Honorable Court is now adjourned until Monday next at 10 o'clock.